IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STATIC MEDIA LLC,

                              Plaintiff,                        OPINION AND ORDER

     v.

                                                                18-cv-330-wmc

LEADER ASSOCIATES LLC,

                              Defendant.

Plaintiff Static Media LLC, the owner of a design patent for a stadium seat, accuses defendant Leader Associates LLC of patent infringement. Before the court is defendant's motion for summary judgment, seeking judgment in its favor on grounds of indefiniteness or noninfringement. (Dkt. #28.) For the reasons that follow, the court will deny defendant's motion as to invalidity based on indefiniteness, but will grant the motion as to defendant's infringement challenge.[1]

UNDISPUTED FACTS[2]

A. Overview of the Parties

Plaintiff Static Media LLC is the owner of the patent in suit. Anthony DoVale is its managing member. DoVale is an attorney specializing in intellectual properly law, including the prosecution of patents. Defendant Leader Associates LLC is based in Beloit,

---

[1] Also before the court is a motion by plaintiff to exclude defendant's purported reliance on an advice of counsel opinion. (Dkt. #41.) Because defendant does not rely materially on this letter in seeking summary judgment, and because it has no bearing on the court's grant of summary judgment for noninfringement, the court will deny that motion as moot.

[2] Unless otherwise noted, the following facts are material and undisputed when viewing the record in the light most favorable to the plaintiff as the non-moving party.

Wisconsin, and advertised, distributed, offered for sale and sold the accused product, sold as the "Leaser Accessories Wide Padded Folding Stadium Chair."

### B. U.S. Patent No. D771,400

On November 5, 2016, the United States Patent and Trademark Office issued U.S. Patent No. D771,400 (the "'D400 patent") to DoVale. DoVale is the sole inventor named on the patent, and claims to have personally invented, designed and conceived of the stadium chair disclosed in the patent. The patent claims "[t]he ornamental design for the stadium seat, as shown and described below." (Compl., Ex. 1 (dkt. #1-1) 2.) The patent contains eight figures of the stadium seat from various perspectives, which are displayed below, and perhaps most distinguished by its clean lines and simple design. Figures 1 and 2 show the seat from **left and right perspectives**:



FIG. 1                          FIG. 2

2

Figure 3 shows the chair from the **front view and** Figure 5 from the **rear view**:



FIG. 3            FIG. 5

Figures 4 and 7 show the **left and right side elevational view**:



FIG. 4          FIG. 7

Figure 6 displays the **top view and** Figure 8 displays the **bottom view**:



**FIG. 6**



**FIG. 8**

### C. Assignment and License

DoVale assigned all rights, title and interest in the 'D400 patent to Static Media on September 10, 2017. With DoVale's consent and authorization, Static Media entered into a license agreement with Belnick, Inc., granting Belnick an exclusive license to make, use and sell any product incorporating or embodying the 'D400 patent. Belnick manufactured stadium chairs incorporating the design disclosure in the 'D400 patent, and it has sold thousands of such chairs, including through websites such as Amazon.com.

### D. Accused Infringing Product

Via its expert, defendant submits photographs of the accused infringing product, taken from similar perspectives as in the figures in the 'D400 patent:







(Kemnitzer Non-Infringement Rept. (dkt. #34) ¶¶ 51-74.)

## E. Prior Art References

In his report, defendant's expert also identified a wide assortment of prior design patents for stadium seats, including references cited by the examiner in the 'D400 application, which are marked with an asterisk:





| 4,541,666 | D293,282 | 4,715,652 | 4,781,413 |
| 4,824,171 | 4,930,838 | 5,058,949 | 5,067,771 |
| D332,010 | 5,433,502 | D360,768 | 5,516,193 |
| D376,484 | 5,580,130 | D396,964 | D412,793 |
| 5,961,178 | D418,317 | D421,190 | D421,191 |



(Kemnitzer Non-Infringement Rept. (dkt. #34) ¶¶ 32.)


## OPINION

"The federal patent laws have long permitted those who invent designs for manufactured articles to patent their designs." *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016) (citing Patent Act of 1842, § 3, 5 Stat. 543–544). Under 35 U.S.C.

§ 171(a), patent protection is available for a "new, original and ornamental design for an article of manufacture." To be "ornamental," and thus qualify for protection, "a design must present an aesthetically pleasing appearance that is not dictated by function alone, and must satisfy the other criteria of patentability." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148 (1989).

While the patent at issue is one of design rather than utility, that does not begin to excuse the nature of the parties' submissions to this court. For starters, defendant's briefing reads like an outline or suggestion of possible arguments, with little discussion of the law and only minimal analysis.[3] While plaintiff's brief is heavy on the law, it, too, is devoid of analysis, making almost no effort to apply that law to the design patent and alleged infringing product at issue. Moreover, neither party sought any construction as to the essential, ornamental components of the patent's design, nor did plaintiff secure expert testimony. Even accounting for the fact that the role of claims construction in design patent cases is more limited, the parties could at minimum have sought construction of the functional aspects versus ornamental elements of the patent. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (explaining that "distinguishing between those features of the claimed design that are ornamental and those that are purely

---

[3] The brief and other materials filed by defendants on summary judgment is all the more disappointing because it was signed by counsel who practices regularly in this court. While the court understands that local counsel is often secured in patent cases with an understanding that that their role will be limited by costs and other practical considerations (too many cooks, etc.), but the court expects local counsel to exercise some modicum of quality control and professional judgment before signing off on briefs that fall so far short of that typically filed in this court, much less allow the filing of responses to proposed findings of facts lacking record citations, among other glaring deficiencies.

functional" is an acceptable area of claims construction in design patents).

While it is ultimately plaintiff's burden to demonstrate infringement and, as part of that, to identify the ornamental aspects of the design warranting patent infringement, in moving for summary judgment, the defendant might at minimum have sharpened the areas of dispute with regard to invalidity on which it bears a higher burden of proof.[4] With those initial comments aside, the court turns to defendant's purported bases for an award of summary judgment in its favor: (1) invalidity due to indefiniteness; and (2) non-infringement.

## I. Invalidity Challenge

Rather than challenging the design patent on novelty or obviousness grounds, defendant raises a challenge based on indefiniteness, pointing to alleged discrepancies between the drawings (or the patent licensee's description of the drawings) and the description provide by the inventor himself. Defendant argues that the drawings show a "segmented" line, directing the court to a drawing in its expert's report for support:

---

[4] Defendant has the burden of proving invalidity by clear evidence. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015) (citing *Microsoft v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).



**FIG. 3**

(Kemnitzer Invalidity Rept. (dkt. #33) ¶ 43.)  Defendant also points to testimony of the patent licensee that the seat back in Figure 3 is not a straight line.  (Glazer Depo. (dkt. #21) 33-35.)  In contrast, the inventor Anthony DoVale testified at his deposition that the line is straight.  (DoVale Depo. (dkt. #22) 61-63 ("Q. . . . [T]he lower portion of the seat back shown on Figure 3, it looks readily apparent that it is not a straight line.  Would you agree?  A.  I don't because this is from a 3D drawing[.  I]t is straight across.").)

Putting aside whether the drawings actually show a straight line or not, defendant's argument undermines a finding of indefiniteness.  In its brief, defendant contends that "[t]he disclosures in the '400 Patent show the bottom of the seat back portion to be a segmented line, as can be plainly seen in ALL the figures in '400 Patent that show this attribute: Figs. 1, 2, 3, and 5."  (Def.'s Opening Br. (dkt. #29) 12.)  For a design patent to be invalid for indefiniteness, however, there must be "*internally* inconsistent drawings" that "preclude the overall understanding of the drawing as a whole."  *In re Maatita*, 900 F.3d 1369, 1375 (Fed. Cir. 2018) (emphasis added).

Here, defendant actually contends that there are *no* inconsistencies between the

drawings, but rather an inconsistency between the design drawing and the inventor's later deposition testimony. As such, the public is on notice of the scope of the disclosure, and the patent does not fall within a "zone of uncertainty," at least based on this argument. *Nautilus v. Biosig*, 572 U.S. 898, 909-10 (2018). Said another way, to the extent defendant contends that DoVale's deposition *testimony* creates uncertainty, the argument fails because "the testimony of an inventor cannot be relied on to change the meaning of the claims." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) (citations omitted). Indeed, defendant could hardly be further from proving invalidity, much less proving it "by clear evidence." Accordingly, the court will deny defendant's motion for summary judgment on this basis.[5]

## II. Infringement

Defendant alternatively seeks summary judgment on the basis that it does not infringe the 'D400 patent. On this issue, *plaintiff* has the burden of proving infringement by a preponderance of the evidence. *See Ethicon Endo-Surgery*, 796 F.3d at 1335. The Federal Circuit set forth the standard for determining infringement of a design patent in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*). That case involved a design for a "nail buffer, consisting of a rectangular, hollow tube having a generally square cross-section and featuring buffer surfaces on three of its four sides." *Id.* at 668. The *en banc* court in *Egyptian Goddess* expressly rejected a "point of novelty" test as

---

[5] As discussed below, this ruling does not preclude the defendant from arguing that the design discloses a segmented line in support of a finding that the overall appearance of the accused product is not substantially similar to the patented design, particularly since plaintiff bears the burden of proof as to infringement.

part of its infringement analysis; instead, it held that the "ordinary observer" test should be the sole test to determine infringement in the design patent context. *Id.* at 678.

In so holding, the *en banc* court adopted a two-part test. The first part involves comparing the patented design and the accused design:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by *Gorham* [*Co. v. White*, 81 U.S. 511 (1871)].

*Id.* at 678. The court further explained that this test should be applied "through the eyes of an observer familiar with the prior art." *Id.* at 677.

If the patentee is able to clear the first part of the test, the second part involves comparing the patented and accused design alongside a prior art reference or references:

> In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art, as in many of the cases discussed above and in the case at bar. Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.

*Id.*

While this two-part test would appear to call for a careful consideration of subtle distinctions between the chained, accused, and prior art designs typically reserved for a trier of fact, the Federal Circuit repeated held in *Egyptian Goddess* and its progeny that no reasonable fact finder could conclude the particular accused product before it is

"substantially the same" as the patented design based on plain, if arguably superficial, differences and, therefore, affirmed summary judgment in a defendant's favor. *See, e.g., id.* at 682 (holding that "no reasonable fact-finder could find that EGI met its burden of showing, by a preponderance of the evidence, that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design"); *Ethicon Endo-Surgery*, 796 F.3d at 1337 (affirming district court's decision granting summary judgment to defendant because the ornamental designs of the patent are, "as a whole, plainly dissimilar from the ornamental design" of the accused design); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1296 (Fed. Cir. 2010) (affirming district court's grant of summary judgment of noninfringement because "the overall effect of the streamlined theme makes the [accused design] significantly different from [the patented] design"); *Wallace v. Ideavillage Prods. Corp.*, 640 Fed. Appx. 970, 975 (Fed. Cir. Mar. 3, 2016) (affirming summary judgment for defendant, finding that the patent design of a body-washing brush and the accused product are "plainly dissimilar"); *High Point Design LLC v. Buyer's Direct, Inc.*, 621 Fed. Appx. 632, 641 (Fed. Cir. July 30, 2015) (affirming summary judgment grant to defendant because "the patented and accused designs bring to mind different impressions").

Recognizing in its opening brief that a design patent only covers the ornamental aspects of a design, defendant contends that the 'D400 patent does not protect "common structural requirements that are found universally on similar products: the seat cushion, the seat back (panel), the foldable mechanism (if foldable)." (Def.'s Opening Br. (dkt. #29) 15.) In turn, plaintiff concedes as much by failing to dispute that the design patent

at issue does not cover such functional elements as a seat cushion, seat back or panel, and foldable mechanism, but argues instead that certain aspects of those functional elements may be assigned protected, ornamental features. *See, e.g., Ethicon Endo-Surgery*, 796 F.3d at 1333 (describing the design patent in the *Richardson* case as only covering the "specific ornamental aspects" of a multi-function tool). Consistent with this distinction, plaintiff appears to claim the following, non-functional elements of its design: "an L-hook centered at the front of each stadium seat, a carrying handle located in the center of the back of the stadium seat, different dimensions in height and width, and use of different seat back panel." (Pl.'s Opp'n (dkt. #43) 33.) As noted above, neither party sought claims construction on the functional versus the ornamental aspects of the design, presumably on the basis that such a construction would not be necessary or helpful to the jury.

Applying the two-part "ordinary observer" test articulated in *Egyptian Goddess*, the court first considers the patented design with the accused infringing product to see if they are "sufficiently distinct" to conclude that no reasonable jury could find them "substantially similar." Under this test, the question is whether "an ordinary observer, familiar with prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess*, 543 F.3d at 681).

In its proposed findings of facts and its expert report, defendant provides the following images of the patented design and accused infringing product:



FIG. 1



FIG. 2



Back Panel material folded over frame member with top of frame member exposed.

Back panel material seamed at top edge creating "pocket" containing and concealing frame member.



FIG. 4



FIG. 5

(Def.'s PFOFs (dkt. #30) ¶¶ 11-16.)





(Kemnitzer Non-Infringement Rept. (dkt. #34) ¶¶ 68, 73.)

Based on these images, defendant points to several features that it contends an ordinary observer would be compelled to find not "substantially the same":

- The seat back panel of the Accused Product is quilted with six vertical columns while the seat back panel of the '400 Patent is not quilted.

- The bottom edge of seat back panel of the Accused Product is horizontal and

straight while the seat back panel of the '400 Patent is segmented with the outside segments sloping upward to a higher center segment that is straight.

- The top edge seat back panel of the Accused Product is "puckered" at both ends while the top edge seat back panel of the '400 Patent is straight from end-to-end.

- The top edge of the seat back panel of the Accused Product is lower than the top edge of the seat back panel of the '400 Patent.

- The Accused Product has a storage panel attached to the front surface of the seat cushion with two visually distinctive pockets while the '400 Patent has no such feature.

- The front-to-back dimension of the Accused Product seat cushion is narrower than the '400 Patent.

- The seat cushion of the Accused Product is thinner than the '400 Patent.

- The Accused Product has an adjustable carrying strap while the '400 Patent has no such feature.

- The Accused Product has a carrying handle that is rectangular in cross-section and with no visible attachment components while the '400 Patent has a much thicker "barrel-shaped" carrying handle with exposed attachment components.

- The bottom surface of the Accused Product is smooth and covered with the same fabric as the seat cushion while the bottom surface of the '400 Patent is interrupted by seat frame cross-members.

(Def.'s Opening Br. (dkt. #29) 16-17.)

In response, plaintiff takes issue with defendant identifying specific, distinguishable elements of the design. However, a review of the key Federal Circuit cases considering infringement claims of design patents reveals that this is the *exact* analysis engaged in by that court as well. *See Egyptian Goddess*, 543 F.3d at 682 (primarily relying on the fact that the patented design of a nail buffer has three buffer pads, whereas the accused design has four); *Ethicon Endo-Surgery*, 796 F.3d at 1335-36 (requiring review of the claim design "as a whole," but still considering the "overall contoured shape" and the "ornamentation of

the trigger, torque knob, and button elements of the claimed and accused designs" of surgery tools); *Richardson*, 597 F.3d at 1296 (pointing out distinctions with respect to the "streamlined visual theme . . . , including elements such as a tapered hammer-head, a streamlined crow-bar, a triangular neck with rounded surfaces, and a smoothly contoured handled" of two multi-function tools); *Wallace*, 640 Fed. Appx. at 972 (listing six differences between the patented design and the accused design of body-washing brushes); *High Point Design*, 621 Fed. Appx. at 641 (describing differences in appearance of the patented slipper design and the accused Fuzzy Baba slipper).

Of course, the court should: (1) not latch onto a single difference to conclude that the designs are not "substantially similar"; and (2) ultimately be mindful of the "overall appearance." Still, such analysis by necessity requires some dissection of the competing designs, provided the court recognizes that "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *See Crocs*, 598 F.3d at 1303 (internal citation and quotation marks omitted).

Here, the court finds that a reasonable jury would recognize the following, readily distinguishable design differences between the '400 patent and the accused product, which individually may not be enough, but collectively render them substantially different in ornamentation, or so a reasonable jury would have to find. *First*, and most notably, the seat back panel of the accused design is quilted, with vertical columns of padding, as distinct from the smooth, nonpadded seat back panel disclosed in the 'D400 patent. In light of the quilted padding of the accused design, the top edge of the seat back panel is also "puckered," whereas the patented design is smooth along the edge, with the seat frame

obviously exposed on each end.  The dimensions of the back seat panel are also noticeably different, with the accused design's panel shorter in height than that disclosed in the patented design.  In other words, the back panel of the patented design would extend up higher on the back than the accused design.  *Second*, the carrying apparatus of the two designs are distinct.  In the accused product, the handle is a simple rectangular bar tucked into the back of the seat with no visible attachment.  In equally marked contrast, as the seat back ornamental designs, the handle on the patented design is much thicker *and* protrudes noticeably from the back of the chair, as shown prominently in Figures 4 and 6. *Third*, the bottom surface of the accused design is wrapped in the same fabric as the seat cushion and covers the metal infrastructure, as opposed to the bottom surface of the 'D400 patent that distinctly chose to leave a cross-bar exposed.  *Fourth* and finally, adding to the overall difference in the two designs, the court notes that the seat cushion in the accused design is both thinner and narrower than the seat cushion in the 'D400 patent.

In response, plaintiff offers little analysis or evidence to support a finding of substantial similarity.  Instead, plaintiff points to the inventor Anthony DoVale's following deposition testimony:

> Q: From your previous questions and answers, are you saying that the reason you contend there's infringement on the accused product is because generally the product looks very similar to your design?
>
> A: Basically, yes.  I mean, as a whole when I look at their product or your product and I look at our patent application or patent – issued patent, it looks the same.

However, general testimony that the accused product and design in the issued patent "look the same," without more, is conclusory and not helpful.  *High Point Design*, 621 Fed. Appx.

at 642 ("Such high-level similarities, however, are not sufficient to demonstrate infringement.") (citing *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1332 (Fed. Cir. 2012)). Indeed, plaintiff's only argument that appears to have some traction is that a defendant may not avoid infringement by simply identifying *additional* features. *See Advantek Mktg., Inc. v. Shanghai Walk-Long Tools Co.*, 898 F.3d 1210, 1216–17 (Fed. Cir. 2018) ("A competitor who sells a kennel embodying Advantek's patented structural design infringes the D'006 patent, regardless of extra features, such as a cover, that the competitor might add to its kennel."). As such, the court agrees that defendant's front pocket and an adjustable carrying strap should not be considered in determining whether the two designs are substantially similar, but that still leaves all of the ornamental difference just listed above.

Considering all of these differences from the perspective of an ordinary observer, who is familiar with the multitude of prior art references listed in the 'D400 patent and displayed above, the court concludes the two designs are "sufficiently distinct" that no reasonable jury could find them "substantially similar." In other words, no reasonable jury could find that an ordinary observer would be duped into believing that defendant's stadium chair is the same as the design disclosed in the 'D400 patent.[6]

---

[6] If needed, the second step of the test involves consideration of the "the claimed and accused designs with the prior art." *Egyptian Goddess*, 543 F.3d at 678. Because "comparing the claimed and accused designs with the prior art is beneficial only when the claims and accused designs are not plainly dissimilar," *Ethican Endo-Surgery*, 796 F.3d at 1337, the court need not engage in this analysis here. Even so, the court does note that among the designs identified by defendant's expert, the seat back of the 'D400 Patent are far and away more like those in design patents D376,484, D459,602, D468,548 and 8,322,784. In contrast, the accused product's seat back cover is substantially more like 3,066,980 and 6,352,306. The same comparisons can be made from the prior art with respect to each of three other marked ornamental design differences listed above.

<center>ORDER</center>

IT IS ORDERED that:

1) Defendant Leader Accessories, LLC's motion for summary judgment (dkt. #28) is GRANTED IN PART AND DENIED IN PART. Summary judgment of non-infringement is granted to defendant.

2) Plaintiff Static Media LLC's motion strike an advice of counsel letter (dkt. #41) is DENIED AS MOOT.

3) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 30th day of August, 2019.

<div style="margin-left: 40%;">BY THE COURT:</div>

<div style="margin-left: 40%;">

/s/

_____

WILLIAM M. CONLEY
District Judge

</div>