IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STATIC MEDIA LLC,

                         Plaintiff,                             18-cv-330-wmc

   v.

LEADER ACCESSORIES LLC,

                         Defendant.

On August 30, 2019, Judge Conley entered judgment in favor of defendant Leader Accessories LLC in this patent infringement case. Dkt. 53. On October 18, 2019, plaintiff Static Media LLC filed a motion for sanctions, contending that Leader disclosed confidential information from this case to a defendant in another lawsuit brought by Static Media, in violation of the protective order agreed to by the parties and entered by the court. Dkt. 58. For the reasons below, I am granting the motion to the extent that I find Leader and its attorneys in contempt of court for violating the protective order. I will stay ruling on Static Media's request for fines, attorneys fees, and costs until I obtain more information from the parties.

## BACKGROUND

On September 14, 2018, Static Media and Leader filed a joint motion for a stipulated protective order, in which they agreed to designate certain documents and information produced in this case as "Confidential" or "Highly Confidential – Trial Counsels' Eyes Only" information. Dkt. 13. I entered the protective order on the same day. Dkt. 14.

Paragraph 3 of the protective order provides that all confidential information designated under the order

> shall be used solely for the purpose of this action and no person receiving such information or documents shall, directly or indirectly, transfer, disclose

> or communicate in any way the information or the contents of the documents to any person other than those specified in paragraph 4.

Paragraphs 4(f) and 5 specify that the following persons, among others, may access Confidential and Highly Confidential – Trial Counsels' Eyes Only information:

> outside independent persons (i.e., persons not currently or formerly employed by, consulting with or otherwise associated with any party) who are retained by a party or its attorneys to furnish consulting, technical or expert services and/or to give testimony in this action and have executed a 'Written Assurance.'

Finally, paragraph 16 states that the protective order remains in effect after the final action, and the court retains jurisdiction over the parties for purposes of enforcing the order.

Static Media's counsel designated as Confidential or Highly Confidential certain testimony and exhibits from the January 24, 2019 deposition of Gary M. Glazer and from the January 24, 2019 deposition of Anthony DoVale, Jr. *See* dkts. 21-22 (marked confidential and filed under seal). In particular, Static Media's designations included testimony related to the November 11, 2015 licensing and royalty agreement between it and Belnick, Inc., and Static Media's sales and revenue information. Although Static Media agreed to remove the confidentiality designations for a handful of pages from the two deposition transcripts in conjunction with the parties' briefing of Leader's motion for summary judgment, it did not remove any other designations in those transcripts and it did not allow Leader to share the information with a third party. *See* dkt. 59 at ¶¶ 3, 5. Leader has never requested that Static Media change the designation of any information or document in either the Glazer or DoVale depositions pursuant to paragraph 12 of the protective order. *Id.* at ¶ 4.

Meanwhile, in October 2018, DoVale—the inventor of the D400 patent at issue in this case— sent a letter to OJ Commerce, LLC, alleging infringement of Static Media's D400 patent. In November or December 2018, OJ Commerce's lead counsel, Shlomo Y. Hecht, contacted

Leader's attorney, Jen-Feng Lee, about the Wisconsin action regarding the same patent. *See* dkt. 63. Given the likelihood that Static Media would file suit against OJ Commerce, Leader and OJ Commerce decided to form a joint defense group (JDG). According to Hecht, JDG counsel work like a group of mutually retained outside counsel for the purpose of common defense by discussing and consulting with one another to promote a joint interest.

On January 30, 2019, Attorney Susan Warner filed a patent infringement complaint on behalf of Static Media against OJ Commerce in the Southern District of Florida, Case No. 19-cv-60270. To formalize their earlier discussions, OJ Commerce and Leader executed a joint defense agreement (JDA) on February 15, 2019. Four days later, Hecht signed a Notice of Adherence to the Protective Order issued in the Wisconsin case. It was Hecht's understanding that JDG counsel are obligated to protect all shared confidential information and documents. Lee then provided Hecht with copies of the confidential deposition transcripts and the 2015 royalty agreement and payment information for Static Media's D400 patent. In addition, Lee admits that two days before the JDA was executed, he provided OJ Commerce's expert witness, Ronald Kemnitzer, with copies of the confidential deposition transcripts, but only after Kemnitzer signed a notice of adherence to the protective order. (Kemnitzer later provided an expert opinion on infringement and invalidity of the D400 patent in support of Leader's motion for summary judgment in this case.)

On June 14, 2019, the Southern District of Florida issued an order to stay all proceedings in the suit against OJ Commerce, pending the outcome of the Wisconsin action. In September 2019, Static Media and OJ Commerce entered settlement negotiations. During a telephone call on September 26, Hecht told Warner about the JDA and his receipt of the discovery materials from the Wisconsin case, including the Glazer and DoVale deposition transcripts and exhibits, the 2015

3

licensing and royalty agreement, and the amount of the royalty paid to Static Media under that agreement. According to Hecht, Static Media made what he considered to be "an extremely high royalty demand" in light of the royalty agreement disclosed in the Wisconsin action.

**ANALYSIS**

Static Media asks that the court find Leader and its counsel in contempt of the protective order and provide the following relief:

- Require Leader and its counsel to identify and produce to Static Media all of their communications with OJ Commerce and its counsel related to this case, along with a specific accounting of each disclosure of information designated confidential or highly confidential.

- Fine Leader and its counsel, jointly and severally, $1,000 for each violation of the protective order. *See Frazier*, 2005 WL 372253, at *4 (imposing $1,000 fine jointly and severally on plaintiffs and their counsel for each violation of protective order).

- Award Static Media reasonable attorneys' fees and costs for the filing of its motion.

Leader opposes the motion, arguing that Hecht was allowed access to confidential and highly confidential documents because he was providing consulting services as part of the company's joint defense agreement with OJ Commerce and agreed to comply with the protective order in this case. Alternatively, Leader points out that no harm resulted from the disclosure because the 2015 licensing agreement would have been produced during discovery in the Florida case had the stay been lifted.

As this court has made clear, a protective order is not a "paper tiger" and will be enforced in accordance with Fed. R. Civ. P. 37(b)(2), which allows for the imposition of sanctions for a party's failure to obey a discovery order. *Frazier v. Layne Christensen Co.*, No. 04-C-315-C, 2005 WL

4

372253, at *4 (W.D. Wis. Feb. 11, 2005). *See also Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*, 2009 WL 10695131, at *3 (N.D. Cal. Jan. 29, 2009) (applying Rule 37 to protective orders). Sanctions may include "treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A)(vii); *GQ Sand, LLC v. Range Mgmt. Sys., LLC*, 278 F. Supp. 3d 1115, 1123 (W.D. Wis. 2017) (holding defense attorneys in civil contempt for violating protective order by using confidential materials for a purpose unrelated to the lawsuit). In addition, Rule 37(b)(2)(C) requires that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

The Court of Appeals for the Seventh Circuit has explained that "[a] court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737-38 (7th Cir. 1999) (internal citations omitted). In addition, civil contempt sanctions serve the remedial purpose of compensating the complainant for losses sustained as a result of the misconduct. *Id.* In order to impose sanctions, a district court must point to a "specific decree" that sets forth an "unequivocal command," *id.*, and find that the party in contempt "displayed willfulness, bad faith, or fault" in violating it, *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 778 (7th Cir. 2013) (quoting *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005)).

Here, paragraph 3 of the protective order unequivocally states that all confidential information "shall be used solely for the purpose of *this* action," and that disclosures are limited to those persons identified in paragraph 4. Paragraph 4(f) and 5 discuss the release of information to outside consultants and experts, but those provisions also make clear that any such services must

5

be furnished "in this action." Although Leader suggests that Hecht provided consulting services for the purposes of this case, much like expert witness Kemnitzer, it provides scant detail about the nature of the JDG or the exact nature of Hecht's services. In his declaration, Attorney Lee generally describes Hecht's consultation as "comprehensive, encompassing infringement, invalidity, damages, and additional and assertable potential defenses." Dkt. 62 at ¶ 15. However, Hecht himself admits that he used the confidential information he received from Leader to bolster OJ Commerce's defense in the Florida litigation, and he made those intentions clear to Leader's counsel before entering the JDA.

As Static Media points out, the "joint defense" or "common interest" doctrine on which Leader relies "is an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person" and "extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). *See also Integra Bank Corp. v. Fid. & Deposit Co. of Maryland*, 2014 WL 116292, at *4 (S.D. Ind. Jan. 10, 2014) (quoting same and holding "joint defense privilege . . . applies when a non-party sharing the client's interest is a party to a confidential communication between an attorney and client"). The confidential depositions, exhibits, and licensing agreement filed by Static Media in this court are not Leader's attorney-client communications or work product and cannot be protected under the JDA between Leader and OJ Commerce under any conceivable interpretation of the common interest or joint defense doctrine. These documents were designated as confidential or highly confidential by Static Media and filed under seal in this case. Moreover, the JDA is a private contract between Leader and OJ Commerce, and its terms cannot supersede, modify, or amend the protective order entered in this case. It is illogical, unreasonable and self-serving for Leader to contend that it can unilaterally disclose Static

Media's confidential information from this case to a third party so long as Leader agrees to do so under the terms of a JDA.

Leader contends that even if its disclosures were inappropriate, no harm befell Static media because OJ Commerce would have asked for and received the 2015 licensing agreement during discovery in the Florida case if the stay had been lifted. I disagree. OJ Commerce received Static Media's confidential information during settlement negotiations while the stay was ongoing and it used this information against Static Media to gain a tactical advantage during the negotiations.

This is not a close call. Leader was at fault and it acted willfully and in bad faith by disclosing confidential and highly confidential information to third parties in violation of the protective order entered by the court on September 14, 2018. Accordingly, I find Leader and its attorneys in contempt of court and will assess a fine and cost shifting pursuant to Rule 37(b)(2)[c] as relief.

The court needs more information in order to determine the appropriate amount of fines, fees, and costs. Toward this end, Leader must provide to Static Media a specific accounting of each disclosure of information designated confidential or highly confidential. After receiving this information, Static Media may submit to the court a proposed fine for the identified disclosures, an itemized bill of its fees and costs for the preparation of the motion for sanctions, and a brief supporting argument. Leader will be given an opportunity to respond as it sees fit.

## ORDER

IT IS ORDERED that:

(1) Plaintiff Static Media LLC's motion for sanctions, dkt. 58, is GRANTED to the extent that defendant Leader Accessories LLC and its counsel are found to be in contempt of court for violation of the protective order.

(2) The motion is STAYED in all other respects, pending the following briefing to be submitted by the parties:

(a) Not later than January 10, 2020, defendant and its attorneys shall identify and produce to plaintiff all of their communications with OJ Commerce and its counsel related to this case, along with a specific accounting of each disclosure of information designated confidential or highly confidential.

(b) Not later than January 24, 2020, plaintiff may submit a proposed fine for the identified disclosures, an itemized bill of fees and costs for the preparation of the motion for sanctions, and a brief supporting argument. Defendant will have until February 3, 2020 to respond.

Entered this 24th day of December, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge