## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STATIC MEDIA LLC.<br><br>        Plaintiff,<br><br>vs.<br><br>LEADER ACCESSORIES LLC<br><br>        Defendant. | Case No. 18-cv-330<br><br>JURY TRIAL DEMANDED |

## LEADER ACCESSORIES LLC'S RESPONSE TO PLAINTIFF'S PROPOSED FINE AND ECF #71 ORDER

Defendant Leader Accessories LLC ("Leader") hereby responds to Plaintiff Static Media LLC's ("Static Media") submitted proposed fine and argument, pursuant to the Court's order ECF #71.

### I. Sanction Imposed Must be Proportionate to All The Circumstances.

Defendant Leader and its counsel concur with the legal principle that a district court has the power to "fashion an appropriate sanction for conduct which abuses the judicial process", per the *Salmeron v. Enter. Recover Sys.* case and the *Maynard v. Nygren* case cited by Plaintiff Static Media.The *Maynard* case further stressed that the sanction must be "one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction", *Maynard v. Nygren*, 372 F. 3d 890, 892 – 893 (7th Cir. 2004).

Plaintiff Static Media commenced the present patent infringement lawsuit against Leader on May 7, 2018 and a similar lawsuit in the Southern District of Florida against OJ Commerce on January 30, 2019. On September 14, 2018, counsel for Leader and Static Media filed with the Court a stipulated protective order which the Court entered on September 14, 2018. On Feburary

1

15, 2019, counsel for Leader Accessories and OJ Commerce entered into a Joint Defense Group Agreement ("JDG") to consult with one another in the joint defense of the respective cases. On February 19, 2019, Attorney Lee, counsel for Leader, provided to Attorney Hecht, counsel for OJ Commerce, a copy of the protective order and requested that Attorney Hecht sign the acknowledgement, which requires compliance with the protective order. Attorney Hecht did so.

With both cases pending and a signed acknowledgement in place, counsel for Leader shared with counsel for OJ Commerce two deposition transcripts and several exhibits to the transcripts. The purpose for sharing the information was to obtain assistance in the Wisconsin action. When providing the documents, Attorney Lee specifically reminded Attorney Hecht of Attorney Hecht's obligations to comply with the Wisconsin protective order. Attorney Lee never authorized Attorney Hecht to use the materials provided in the Florida action being defended by Attorney Hecht or any action other than for consulting in the Wisconsin action. Attorney Hecht never advised Attorney Lee that he intended to use such material outside the Wisconsin action. Attorney Lee had no reason to believe that Attorney Hecht would use royalty information as such information was readily discoverable in the Florida action.

Attorney Lee is an experienced patent litigator and has been involved in at least ten cases where defense counsel entered JDG agreements, both where there were multiple defense counsel in a single case, and where there were multiple proceedings in multiple jurisdictions where the same plaintiff was suing various defendants. Attorney Lee did not understand that consulting with others in these circumstances where such attorneys were also bound by the protective order would constitute a violation of the protective order. Also, Attorney Lee was not aware of any law that so provides.

Attorney Lee has never been found to intentionally have violated a Court's order and certainly did not intend to violate this Court's protective order in this case. The Court seems to suggest that perhaps that is the case and Attorney Lee wants to assure the Court that he would never so act. For example, this is not a case where materials were provided for consultation after the Wisconsin suit was suit dismissed or where Attorney Lee was informed by Attorney Hecht that Attorney Hecht intended to use the material s in the Florida litigation. To the contrary, Attorney Lee specifically advised Attorney Hecht of his obligations to comply with the Wisconsin protective order, i.e., materials could only be used for purposes of Wisconsin action – consulting with Attorney Lee about defending the Wisconsin action.

If the Court believes that Attorney Lee inadvertently violated the protective order, sanctions should be commensurate with the inadvertent violation. A sanction for an intentional violation of a court order is potentially damaging to Attorney Lee's career. There is a serious question whether monetary sanctions are warranted under the circumstances of this case. Attorney Lee can assure the Court that, in similar circumstances in the future, where there is a JDG agreement between counsel in different actions, Attorney Lee will not share information subject to the protective order in one action with counsel in a different action for consultation purposes, without either consent of opposing counsel or further order of the Court issuing the protective order.

Defendant respectfully asks the Court to fashion its order in light of all the circumstances as noted below.

### A.     Leader's Counsel Reasonably Believed His Actions Complied With The Protective Order

"The protective order guides how the parties are to handle confidential materials exchanged during discovery". *Flynn v. FCA US LLC*, 2017 wl 9251214 (S.D. IL. 2014).

The facts of this case showed that Leader's counsel, having more than a dozen JDG experiences in patent litigation, (including cases spanning multiple jurisdictions, (see ECF #62-1), was guided by the terms of the PO in handling confidential information.In the instant case, the fact was not disputed (by the Court or Plaintiff) that Leader's counsel followed the two-prong process of (i) determining the 4(f) person and (ii) binding the 4(f) person to the PO by causing the execution of the Acknowledgement.

The facts clearly indicate that Leader's counsel fully intended to respect and comply with the PO. ("Parties and their counsel must respect and comply with protective orders or these advantages are lost in current litigation and threatened in future litigation. *Oleksy v. General Electric.*, 2014 wl 3820352, at *7 (N.D. IL., 2014). Leader's counsel had no intention of, or motivation to, violate the PO, given the advantage Leader had in the case where Plaintiff had no expert to counter Defense expert's opinion of non-infringement and invalidity.

It is worth noting that, in addition to having Attorney Hecht, OJ Commerce's attorney, sign the Acknowledgment BEFORE emailing the two deposition transcripts over, along with some exhibits[1], Leader's counsel gave repeated reminders to Mr. Hecht to respect and comply with the PO. See attached emails, showing the repeated reminders to comply with the PO, dated 2/19/2019 and 2/25/2019; see ¶2 of Lee Decl. and Exhibit A.Such fact of "respect and comply" was subsequently acknowledged by Plaintiff in the ECF #73-1 filing (Exhibit A to ECF #72), where the 2/19/2019 email (time stamp 12:20 PM) stated such reminder for compliance.

Additionally, Plaintiff acknowledged Leader's "respect and comply" conduct by causing Mr. Heckt to be bound by the PO in the earlier filing of ECF #64: "Static Media now knows that counsel for OJ Commerce has agreed to be bound by the terms of the Protective Order", on page

4

4 of the ECF #64 filing. As such, all of the circumstances show that Leader's counsel did not treat the PO as a paper tiger. To the contrary, Leader's counsel believed that all the necessary steps were taken to comply with the terms of the PO.

### B. The Culpability Determination of "Not a Close Case" is Contrary to The Circumstances of The Disclosure

This Court affirmed Magistrate Judge Crocker's finding of violation, as well as the determination of "not a close case" (Judge Crocker's exact wording is "not a close call"). Such "not a close case" culpability determination is puzzling and, respectfully, not supported by facts or law. The operations and principles of law need to be logical and reasonable. If something is "not a close case", there should be ready and apparent authorities to support a clean-cut finding of right-vs-wrong, black-vs-white, compliance-vs-violation, when the facts are not disputed. Here there is no factually similar controlling precedent.

Defense counsel did NOT use any confidential materials for purposes unrelated to this lawsuit and did not even remotely suggest Attorney Hecht should do so.

### C. The Court Determined Leader's Culpability Based Upon Conjecture

The Court's statement of "defendant's counsel had to know that OJ Commerce's and its counsel's principal use of the information would be in defending against the separate lawsuit brought against it" is not consistent with the facts.

Even Plaintiff acknowledged that Mr. Hecht is bound by the terms of the PO. There is no reason for Leader's counsel to think that Mr. Hecht would not abide by the PO, especially given the repeated reminders.

---

[1] No confidential documents were provided to Mr. Hecht. The only confidential information provided is the royalty rate, which was mentioned in the deposition transcripts. See ¶ 1 in Lee Decl.

Additionally, Leader's counsel was aware that Attorney Hecht would rather not engage in any substantive aspect of his Florida case (including to not use the royalty information relating to damages issues) if the preferred outcome of invalidity in the Wisconsin case was obtained; see ¶6 in the Lee Decl. There was simply no reason that Leader counsel would expect Mr. Hecht to use the royalty information and violate the PO under the circumstances.

### D. Royalty Information Was Otherwise Available to AttorneyHecht

The Court appropriately observed that "he [Hecht] is free to obtain the same confidential information legitimately". That was exactly the understanding by Leader's counsel. The OJ Commerce case was way behind the Wisconsin case; Leader's counsel had no reason to doubt that if such royalty information was needed for puruposes of that case it was readily avaialable through discovery. Attorney Lee had no reason to believe Attorney Hecht would use information provided for use outside the Wisconisn case.

In terms of the litigation procedures, the royalty rate information is expected to be provided to OJ Commerce counsel early, given the affirmative duty to produce, as part of initial disclosures underRule 26(a)"… a party **must, without awaiting a discovery request**, provide to the other parties", damages information/computation. (**Emphasis** added). Plaintiff employed no expert in either the Wisconsin or Florida cases. The royalty information was absolutely needed for the damages computation. It was expected that OJ Commerce would have obtained the royalty information in that case, either via simple propounding interrogatories or by Plaintiff's compliance with the Rule 26 obligation to disclose.

Leader's counsel had NO control over the OJ Commerce case. Mr. Hecht's referring to the royalty information during the settlement talk with Static Media (in September of 2019 after the Wisconsin case ended), instead of propounding his own discovery requests was a problem solely of Attorney Hecht's making.

6

### E. There is Nothing Secret or Surreptitious About Joint Defense Arrangements

Leader's lead counsel has participated in at least 12 JDG agreements. It is not a secret to a patent plaintiff, especially a PAE (patent assertion entity) suing multiple parties, that a JDG would come into existence. There is no legal obligation on the JDG side to disclose, or not disclose, the existence of the arrangement. The "chose to act surreptitiously" characterization imputed impropriety to the normal action of JDG arrangements and should not be the basis to conclude there was a violation.

### F. The Case of *Milwaukee Electric v. SNAP-ON Inc.*; 2016 WL 1719657

There is no case authorities that support the finding of a PO violation in a fact pattern comparable to the instant action. The Milwaukee Electric case ruling, however, is highly relevant. Plaintiff Milwaukee Electric ("ME") initiated a patent case in October, 2014, asserting three (3) patents (the '290 patent, '173 patent, and '510 patent; collectively Three Patents"). On October 2, 2015, the Milwaukee court stayed the Milwaukee Electric v. SNAP-ON case until the completion of the three (3) IPR (inter partes review, initiated by SNAP-ON to invalidate the Three Patents) proceedings.

Defendant SNAP-ON charged ME for violating the Protective Order ("PO") issued in the Milwaukee case because apparently ME used the confidential information learned to formulate discovery in the IPR cases. The Milwaukee court found that "there is no doubt that the plaintiffs used something from the" confidential documents to formulate the discovery requests in the IPR proceeding. The key battle focused on "information or documents designated confidential" must not be used or disclosed beyond the scope allowed by the PO issued in the Wisconsin court. The Milwaukee court's ultimate finding was that plaintiffs have not used or disclosed any confidential information, and thus have not violated the protective order. The Milwaukee court

7

found that there was a distinction between the use of knowledge regarding the <u>existence</u> (underline herein) of certain documents versus the use of the confidential content within the documents. The Milwaukee court's no PO violation finding highlights a commonsense and reasonable interpretation: a reasonable reading must connect its prohibitions to its purpose – protection against disclosure of commercial secrets", at *5.

Here in the Static Media case, Leader did not use the confidential information outside the instant case. The sharing to Mr. Hecht, as consultant fitting the definition in the PO, was believed to have been done by strictly following the 2-prong process.

An attorney can properly compartmentalize the tasks he/she undertakes and properly wear different hats. Mr. Hecht is free to formulate his own discovery requests to obtain the same confidential information for his use in the OJ Commerce case, as Leader's counsel reasonably expected.

But even sharing the confidential information with Mr. Hecht is one notch removed from the no violation determination in the Milwaukee case, because Leader did not use the information in another proceeding.

## II. **Static Media's Proposed Fine is Unreasonable**

The amount of $1,000 for each violation appears to be on par with many court's decisions. However, Static Media's statement of the amount being well within the range of sanctions imposed "in similar cases" is disputed. As noted, the inadvertent violation in this case is not found in any cases. There are no similar cases.

"A party seeking attorney fees bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Court may exercise its discretion to remove any "excessive,

8

redundant or otherwise unnecessary" hours; *American Modern Select Ins. v. Gardner*, 2015 wl 8937744, at *2 (S.D. IL. 2015) . Where the supporting documentation of hours is inadequate, the Court may reduce or deny the award accordingly. *Hensley,* at 433.

Leader notes the points below:

1. <u>Plaintiff billed 7.8 hours for the Reply (ECF #64, 11/8/2019) to Motion for Sanction.</u>

The Reply essentially copied-and-pasted the same arguments in the Opening brief (billed 14.7 hours). It even repeated the erroneous fact to state that Leader disclosed the confidential information "pursuant to a Joint Defense Agreement", when Leader already made it clear in the Opposition (ECF #61) that the JDG established the 4(f) person, and the disclosure is made by following the 2-prong process of the PO. (Plaintiff did acknowledge the fact of Mr. Hecht being bound by the PO at the end of the Reply).

As such, 2 - 3 hours of billing would be reasonable.

2. <u>Plaintiff billed 5.7 hours for the Opposition (ECF #69) to Rule 72(a) Objection/Appeal</u>

It is a 3-page filing. The last (third) page is the signature page. The real argument probably took up one page, and simply repeated the same content (inapplicable case authorities and incorrect factual basis) stated in Plaintiff's prior filings.

The "real argument" said nothing new and presented no opposition to counter Leader's Rule 72(a) Objection/Appeal (ECF #66) that clearly pointed out the incorrect legal predicates and erroneous facts in the ECF #65 Order.

As such, 1 hour of billing would be reasonable.

    3.    <u>Some billing entries are suspect</u>

The work of lead counsel (Mr. Vincent Bushnell of FisherBroyles) and the local counsel (Mr. Harry Van Camp of DeWitt firm) is sufficient to achieve the intended goal.

        a.    1/6/2020 entry (billed by DeWitt firm) of conference (0.2 hours) with a third attorney (Elijah Van Camp) should not be allowed.

        b.    10/17/2019 entry (billed by FisherBroyles firm) of phone conference should not be allowed.

    4.    <u>Some billings benefitted Static Media's work/motion in the OJ Commerce case</u>

The same efforts (fact gathering, legal research, and arguments in motion) substantially benefitted Static Media's similar sanction motion in another proceeding (against OJ Commerce in Florida), as can be seen from PACER filings. As such, some reduction is warranted, though Leader has no access to the billing and the extent of benefit Static Media derived from the overlapping work.

    5.    <u>The 2/19/2019 emails are one occurrence</u>

Due to concerns over email size (some email programs, either server side or client side, had size limitation of 10MB), Leader's counsel broke the email transmission into two separate ones, to avoid potentially email bounce-back. The time stamps showed that the two transmissions are done successively (after confirming the first one was completed, Leader counsel then forwarded from the first one to include second transcript and some exhibits).

In substance, this is only one occurrence.

Had there been a bounce-back (assuming the size limitation or other technical glitches happened, based upon Static Media's argument, that would have been at least three violations: the initial bounce-backs, plus the subsequent successful transmissions of one transcript each.

Although Leader does not believe monetary sanctions are warranted under the circumstances, if the Court concludes otherwise, such monetary sanction should be limited to a 40% reduction in fees, and assessing ONE occurrence of violation.

## **CONCLUSION**

The facts show that Leader's culpability is extremely low and certainly not intentional. Any charge of willful violation to establish culpability is contrary to the evidence. Leader's counsel believed he was acting ethically and upholding obligations to the Court. See ¶7 of Lee Declaration. The Court is respectfully asked to fashion its sanction order proportionate to all the circumstances.

DATED: February 9, 2021         Respectfully submitted,

s/ *Michael J. Modl*
Michael J. Modl, SBN 1011419
AXLEY BRYNELSON, LLP
2 E. Mifflin Street, Suite 200
Post Office Box 1767
Madison, WI 53701-1767
Telephone: (608) 257-5661
Facsimile: (608) 257-5444
E-mail: mmodl@axley.com

Jen-Feng Lee – Admitted *Pro Hac Vice*
Cal. State Bar No. 204328
LT PACIFIC LAW GROUP LLP
17800 Castleton Street, Suite 560
City of Industry, CA 91748
T: (626) 810-7200
E: jflee@ltpacificlaw.com